**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| BAHAMAS LAGUNA AZURE, LLC, | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. _____ |
| | § | |
| CITY OF ROYSE CITY, | § | Jury Demanded |
| *Defendant.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Bahamas Laguna Azure, LLC ("Bahamas"), files its Original Complaint against

the City of Royse City ("City"):

## INTRODUCTION

1.      This civil action is brought pursuant to 42 U.S.C. §§1983 and 1988, to redress the

City's unlawful retaliation against Bahamas for exercising its First Amendment right to petition

government for redress of its grievances.

2.      Bahamas owns and is attempting to develop certain property (the "Bahamas

Property") located within the City's corporate limits and within its extraterritorial jurisdiction

("ETJ").

3.      Development of the Bahamas Property requires Bahamas to secure water and sewer

utility service and to plat its property.

4.      Under Texas law, Bahamas has the right to obtain the requisite utility services from

the City pursuant to City Certificates of Convenience and Necessity ("CCNs") or, if the City

refuses to provide them, to provide those services for itself through other lawful means. Either

route requires that the City communicate with Bahamas about, and act upon, Bahamas'

development requests.

5.      Under current Texas law, to proceed with development of its property, Bahamas is

required to plat its property in accordance with the City's subdivision ordinance.

ORIGINAL COMPLAINT – PAGE 1

6.      In a circular fashion, the City's subdivision ordinance requires that Bahamas simultaneously: (a) obtain final plat approval of the Bahamas Property before the City will provide Bahamas with water and sewer service under the City CCNs; and (b) demonstrate that adequate water and sewer capacity exists to serve the Bahamas Property, before Bahamas' final plat can be approved.

7.      The City purports to implement its development ordinances and requirements for property within its ETJ through City staff, based upon various unwritten policies and procedures which the City does not publish and which it has actively concealed from Bahamas.

8.      According to the City, when a property owner seeks to develop property within the City's ETJ, the City's ordinary custom, policy, and practice is to engage in a collaborative process involving: (a) a determination whether the property is located within the City's CCN service area; (b) a dialogue to discuss what utility infrastructure may be required to comply with the City's subdivision ordinance; and (c) the negotiation and entry into a service agreement.

9.      The City admits that no development in its ETJ has ever obtained final plat approval (and utility services under the City CCNs), without the City engaging in the collaborative process described in Paragraph 8.

10.     After more than a year of unsuccessful attempts to obtain information from the City concerning its various unwritten customs, policies, and practices for obtaining water and sewer utility services under the City CCNs, and as an alternative path to obtain to obtain the requisite services necessary for it to develop the Bahamas Property, Bahamas exercised its constitutionally-protected right to petition for redress, by filing state judicial and administrative proceedings to obtain the requisite information and to compel the City to comply with its statutory obligations or to pursue other lawful alternatives for service.

11. Specifically, Bahamas filed: (a) a petition for pre-suit discovery in Rockwall County District Court pursuant to TEX. R. CIV. P. 202, to obtain information about what the City contended Bahamas must do to obtain utility services pursuant to the City CCNs; (b) an application with the Texas Commission on Environmental Quality ("TCEQ") for a wastewater permit to provide service to its property; (c) administrative proceedings with the Texas Public Utility Commission ("PUC"), to compel the City to honor its obligations under its CCNs; (d) an administrative proceeding before the TCEQ, for authority to form a municipal utility district to provide certain utility services; and (e) a petition with the City seeking to deannex certain Bahamas property located within the City's corporate limits (collectively, "the Petitioning Conduct").

12. Because of Bahamas' Petitioning Conduct, and in retaliation for Bahamas exercising its constitutionally-protected rights of access to the Texas courts and administrative agencies, the City: (a) sued Bahamas and two of its corporate officials, disclaiming that Bahamas had any right to the information or relief it sought; and (b) refused to engage with Bahamas in the collaborative process that, under the City's unwritten policies and procedures, the City admits is a condition precedent to obtain plat approval (and the corresponding utility service required for plat approval).

13. The City's conduct interferes with Bahamas' First Amendment right to petition Texas courts and administrative agencies for redress of Bahamas' various grievances against the City and has caused, and continues to cause, Bahamas to incur damages, costs, expenses, and attorneys' fees compensable under 42 U.S.C. §§1983 and 1988.

### PARTIES

14. Plaintiff Bahamas Laguna Azure, LLC, is a Wyoming limited liability company with its principal place of business located at 2101 Cedar Springs Road, Suite 700, Dallas, Texas 75201.

15. Defendant City of Royse City is a Texas home-rule municipal corporation with its principal office in Royse City, Texas. The City may be served by delivering a copy of the summons and of the complaint to the City Secretary, 305 N. Arch Street, Royse City, Texas 75189.

**JURISDICTION AND VENUE**

16. The Court has jurisdiction under 28 U.S.C. §1331, because this is a civil action arising under the Constitution and laws of the United States.

17. The Court also has jurisdiction over this lawsuit under 28 U.S.C. §1343(a)(3) and (a)(4), to redress the City's deprivation of Bahamas' First Amendment rights under color of law, ordinance, regulation, or custom.

18. Venue is proper in this District and Division under 28 U.S.C. §1391(b)(1) and (2) because the City is a municipal corporation that lies within this District and Division and a substantial part of the events or omissions giving rise to Bahamas' claims occurred in this District and Division.

**FACTUAL BACKGROUND**

**A.      The Bahamas Development.**

19. Bahamas owns and is developing the Bahamas Property – approximately 541.94 acres of property located generally south of the City in Rockwall County. The Bahamas Property includes 111.311 acres inside the City's corporate limits and 430.626 acres outside the City's corporate limits but within the City's ETJ.

20. All of the Bahamas Property is located within areas covered by City CCNs for water and wastewater service.

21. Under Texas law, Bahamas has statutory rights either to obtain the requisite utility services from the City under the CCNs or, if the City refuses to provide those services, to provide

them for itself through other lawful means.  Either route requires that the City communicate with Bahamas about, and act upon, Bahamas' development requests.

**B.     The City's Unwritten Policies for Implementing its Development Ordinances.**

22.     Under the City's utility ordinance, a property owner cannot obtain water or sanitary sewer service under the City's CCNs unless and until the City has approved a final plat for the property.

23.     However, under the City's subdivision ordinance, a property owner cannot obtain a final plat for a development unless and until it has demonstrated the adequacy of water and sewer system capacity to service the proposed development site.

24.     The prevalent municipal standard and practice by which a Texas property owner demonstrates as part of the platting process that sufficient future utility capacity will be in place to service a proposed development, is to request and obtain from a utility provider what is commonly referred to as a "Will Serve" letter. A "Will Serve" letter evidences that a utility provider will have sufficient utility capacity to serve a proposed development and that, subject to whatever conditions may be stated in the letter, the utility provider commits to do so.

25.     The City, however, does not follow the prevalent municipal standard and practice for issuing utility service commitments.

26.     Instead, the City has an unwritten and undisclosed municipal policy that: (a) it will not provide a property owner with a "Will Serve" letter (or utility commitment); (b) it will not respond to any utility request that it interprets to be a request for a future utility commitment or a "Will Serve" letter; and (c) it does not disclose to property owners who seek "Will Serve" letters or utility commitments <u>either</u> that it has a policy against issuing any such commitment <u>or</u> that it also has a policy of not responding to any such request.

27.     The City claims that it follows an unwritten and "case-specific" practice of

requiring a property owner/developer who seeks utility services under the City's CCNs to engage in a dialogue with the City Engineer and certain other City staff about a proposed development's projected water and sewer requirements and the City's present and future capacity to fulfill those requirements.

28. The City Engineer makes the final determination whether City water and sanitary sewer systems are capable of handling the density required by a developer's service request and whether a developer will or will not receive water and sewer service under City CCNs.

29. The City has no written standards or published policies which govern the City Engineer's review and assessment of a property owner's request for water or sewer service. Instead, the City Engineer and City staff reviews all such requests on a case-by-case basis.

30. Assuming that the City participates in the collaborative dialogue with a property owner that it claims is its customary practice and condition for obtaining final plat approval (and satisfaction of the requirement to demonstrate the adequacy of future utility services), the City requires a property owner to enter into a service agreement with terms acceptable to the City.

31. The City's policy and practice of following unwritten policies and procedures to respond to requests for utility services on an ad hoc and case-by-case basis effectively affords the City an absolute veto right over any proposed development that does not satisfy the City – regardless of however arbitrary or capricious the City's demands may be.

32. If the City refuses to engage in a collaborative dialogue with a property owner about the required level of utility service, and refuses to enter into a service agreement, a property owner cannot plat its property and, consequently, cannot develop its property.

33. That is precisely what has happened here.

34. Once Bahamas initiated judicial and administrative proceedings regarding its utility service and development requests, and because Bahamas engaged in its Petitioning Conduct, the

City sued Bahamas and refused to engage with Bahamas in the collaborative process that, under the City's unwritten policies and procedures, the City admits is a condition precedent for a property owner to obtain plat approval (and the corresponding utility service required for plat approval).

35.     The actions by the City in suing Bahamas and refusing to engage with Bahamas in a collaborative dialogue regarding Bahamas' desired development of the Bahamas Property is retaliatory conduct pursuant to a municipal custom, policy, and practice directed and authorized by its City Council, City Attorney and/or other City legal counsel.

**C.     Bahamas' Water and Sewer Commitment Request to the City.**

36.     On March 3, 2022, Bahamas submitted a Request for Water and Sanitary Sewer Commitment to the City (the "2022 Request").

37.     On multiple occasions thereafter, Bahamas sought updates from the City about the status of its pending 2022 Request, but the City did not: (a) respond to the 2022 Request; (b) disclose to Bahamas that the City considered the 2022 Request to be a request for a "Will Serve" letter and that under the City's unwritten policies, the City would not grant a "Will Serve" request; (c) disclose to Bahamas that under its unwritten policies, the City would not respond to such a request; or (d) disclose to Bahamas that under its unwritten policies, Bahamas would be expected to engage in a collaborative dialogue initiated by the City and be required to enter into a service agreement containing terms satisfactory to the City.

**D.     Bahamas' Petitioning Conduct Related to Its 2022 Request.**

38.     On July 1, 2022, Bahamas filed an application for a TCEQ wastewater permit to provide service to its property (the "TCEQ Permit Application").

39.     On September 8, 2022,  due to the City's refusal to act upon or respond to the 2022 Request, Bahamas filed a TEX. R. CIV. P. 202 petition in Rockwall County District Court, seeking

to obtain information about the rationale for the City's inaction and refusal to communicate about the 2022 Request (the "Rule 202 Petition").

40. On September 14, 2022, Bahamas filed a PUC complaint, alleging City impairment of water and sanitary sewer service, based upon the City's refusal or failure to commit to providing retail water service and retail wastewater service to the Bahamas Property within the territory covered by the City's CCNs (the "PUC Complaint").

41. On September 14, 2022, Bahamas petitioned the TCEQ to create Rockwall County Municipal Utility District No. 11 (the "TCEQ Petition"), to facilitate Bahamas' future ability to provide the requisite utility services to its property should the City continue to refuse to do so.

**E. The City's Suit against Bahamas and Refusal to Process Bahamas' 2022 Request and 2023 Request Due to Bahamas' Petitioning Conduct.**

42. In retaliation for Bahamas' Petitioning Conduct, on November 3, 2022, the City sued Bahamas and two of its corporate officials in Texas state court, disclaiming that Bahamas had any right to the information or relief it sought concerning the development of its property.

43. Pursuant to its unannounced municipal policy of not processing development requests once the City became adverse to a property owner in judicial or administrative proceedings, after Bahamas engaged in its Petitioning Conduct, , City staff did not engage with Bahamas on its development requests.

44. The City, however, did not inform Bahamas that, because of its Petitioning Conduct, the City would not communicate with Bahamas about its development requests or take any actions on any such requests.

45. Not until mid-November 2022, did the City reveal in a filing with the PUC what it claimed were its previously undisclosed procedures for processing inquiries from property owners about water and sewer utility services under the City CCNs.

46. On November 18, 2022, the City formally responded to the PUC Complaint, claiming for the first time that "it is not the policy of the City to issue 'Will Serve' letters," (even though Bahamas' 2022 Request had been submitted on March 3, 2022 – eight months earlier) and that Bahamas had not followed various heretofore undisclosed and unwritten City procedures to obtain water or sanitary sewer services from the City. According to the City, the "typical procedure" it follows when it receives a utility service request is to: "(i) require a CCN check to ensure that the property to be served is within the City's CCN service area; (ii) engage in pre-application meetings with the applicant to discuss what utility infrastructure will be needed in order to connect to the City's existing facilities, in accordance with the City's subdivision regulations; and then (iii) negotiate and enter into a service agreement." Per the City, under its unwritten and previously-undisclosed procedure, "[t]hen, and only then, service capacity may be reserved by the applicant."

47. Conspicuously absent from the City's PUC response was any disclosure that: (a) when a property owner seeks legal relief from a judicial or administrative body (like the PUC), as a matter of municipal policy the City stops processing utility service requests under its "typical procedure"; (b) the City's supposed "typical procedure" for processing utility service requests is an unwritten practice that is nowhere published and is applied on an ad hoc and case-by-case basis; (c) the City has an unwritten and undisclosed policy of neither granting nor responding to what the City considers to be a "Will Serve" letter request; and (d) the City has no procedure for accepting or evaluating any application for water or sewer utility service under its CCNs, because no such application exists for what it terms "non-standard" service requests.

48. On November 30, 2022, Bahamas and the City met to discuss various development issues related to the Bahamas Property, but the City still refused to engage with Bahamas or act on the 2022 Request.

49. On January 5, 2023, Bahamas asked the City whether additional information was necessary for approval of the 2022 Request, but the City still did not respond.

50. On March 10, 2023, the City formally responded to the TCEQ Petition, claiming for the first time that Bahamas had not provided "a reliable, consistent quantity of water and sewer service needed for [the Bahamas Property]."

51. Conspicuously absent from City's TCEQ response was any disclosure that, pursuant to municipal policy, the City earlier had stopped all processing of the 2022 Request once Bahamas filed the TCEQ Permit Application, Rule 202 Petition, the PUC Complaint, and the TCEQ Petition, and City staff had stopped engaging with Bahamas on the 2022 Request.

52. On May 11, 2023, to address and resolve whatever uncertainty the City feigned about the quantity of water and sewer service Bahamas desired, Bahamas resubmitted its water and sanitary sewer service request (the "2023 Request").

53. In its 2023 Request, Bahamas recited the number of reliable consistent quality equivalents needed for the Bahamas Property and made no reference to any request for a supposed "Will Serve" letter. Bahamas also attached an updated development plan.

54. The City still has not taken any action on either the 2022 Request or the 2023 Request, although it has recently represented that it will meet with Bahamas Because of the City's repeated obfuscation, delays and retaliatory conduct, however, Bahamas has already sustained damages and incurred needless expenses as the direct result of the City's retaliatory conduct.

**F.      The City Has Retaliated against Bahamas for Exercising Its First Amendment Rights.**

55. The City's persistent inaction, failure to communicate, failure to disclose, and active concealment of what it now contends after-the-fact are its various unwritten policies and procedures for obtaining water and utility service prompted Bahamas to file the TCEQ Permit Application, Rule 202 Petition, PUC Complaint, and TCEQ Petition, to obtain redress.

56. Bahamas' Petitioning Conduct is conduct protected under the First Amendment to the United States Constitution, specifically including the rights of access to the courts and relevant administrative agencies.

57. In direct response to and in retaliation for Bahamas' Petitioning Conduct, pursuant to a municipal custom, policy, and practice directed and authorized by its City Attorney and/or other City legal counsel, the City refused to respond to the 2022 Request, refused to respond to the 2023 Request, and refused to engage in what the City claims is its "typical procedure" for processing utility service requests.

58. In so doing, the City has unlawfully retaliated against Bahamas for Bahamas' exercise of its First Amendment right to petition the government for redress of its grievances.

**G.  The City Is a "Person" under 42 U.S.C. §1983.**

59. The City is a suable person under 42 U.S.C. §1983.

60. At all relevant times, the City officials and staff who have refused to respond to Bahamas' 2022 Request and 2023 Request, and who have refused to engage in what the City now claims is its "typical procedure" for processing utility service requests under the City CCNs (including but not limited to the City Attorney or other City legal counsel and City Engineer), were municipal officials, agents, and/or employees of the City and duly authorized to take those actions on the City's behalf.

61. The referenced municipal officials were clothed by the City with the authority to make official municipal government policy and decisions with respect to the provision of utility services under the City's CCNs, and to implement such policies and decisions.

62. The retaliatory conduct by City officials therefore represents the City's official governmental policy – albeit unwritten.

<u>**CAUSE OF ACTION**</u>

**Civil Action under 42 U.S.C. §1983 for Deprivation of Bahamas'**
<u>**First Amendment Right to Petition the Government for Redress of Grievances**</u>

63.     Bahamas incorporates the foregoing paragraphs as if specifically restated at length herein.

64.     The City's deprivation of Bahamas' right to petition violates 42 U.S.C. §1983.

65.     At all relevant times, Bahamas possessed a clearly-established right to petition the government for redress of its grievances under the First Amendment to the United States Constitution.

66.     At all relevant times, Bahamas' right to petition the government for redress of its grievances encompassed its right to avail itself of: (a) the Texas state courts, by filing the Rule 202 Petition in Rockwall County District Court on September 8, 2022, and (b) the Texas administrative agencies, by filing the TCEQ Permit Application on July 1, 2002 and the PUC Complaint and the TCEQ Petition on September 14, 2022.

67.     The City has intentionally interfered with and violated Bahamas' right to petition the government for redress of its grievances by deliberately stopping consideration of, and refusing to process, Bahamas' development requests and requests for utility services, because of Bahamas' Petitioning Conduct.

68.     The City's interference with Bahamas' Petitioning Conduct is evidenced, among other things, by the fact that the City Engineer – who the City has identified as its final policymaker regarding the adequacy of water and sanitary sewer service capacity for a development site like the Bahamas Property – has testified that, pursuant to City policy promulgated by the City Attorney and/or the City's other legal counsel, because of Bahamas' Petitioning Conduct, she and City staff stopped any efforts to follow the City's typical procedure for processing utility requests under the City CCNs, with respect to the Bahamas Property.

69. The City's refusal to follow its typical procedure for processing Bahamas' request for utility service under the City CCNs, because of Bahamas' Petitioning Conduct, is a retaliatory action violative of Bahamas' First Amendment right to petition the government for redress of its grievances.

70. The City's retaliatory actions, which have caused Bahamas' injury, are the result of official City policy, custom and practice, which has been the moving force for the violation of Bahamas' constitutional rights.

71. The City's retaliatory actions reflect the City's official policy, custom and practice, as made and implemented by: (a) its City Council through formal action on October 25, 2022, when in a public meeting the City Council expressly authorized the City Attorney to take "any legal action necessary to defend against the claims put forth by Bahamas;" as well as (b) those whose edicts or acts may fairly be said to represent official policy, which includes both the City Attorney and City Engineer.

72. Either the conduct by the City Attorney, City Engineer, and City staff is being carried out pursuant to the official City policy, expressly authorized by City Council, in which event it represents the official municipal policy, custom and practice of the City, for which the City is liable under 42 U.S.C. §1983; or, if not, then the conduct by the City Attorney, City Engineer and City staff, which violates Bahamas' clearly-established constitutional right to petition under the First Amendment to the United States Constitution, is *ultra vires,* those individual public officials are not entitled to immunity for their actions, and they ultimately may be held personally liable for their retaliatory conduct.

73. As a result of the City's retaliatory conduct, Bahamas has been unduly delayed and unable to proceed with its development of the Bahamas Property, which has caused it to sustain

damages including, but not limited to, lost or foregone development profits, increased costs, and expenses, including fees attributable to its professional advisors.

74. All of Bahamas' damages have been proximately caused by the conduct of City officials, agents, and/or employees acting in their official capacities, under color of law and pursuant to official municipal policies, customs, and/or practices.

75. In addition to compensatory damages, Bahamas seeks a declaratory judgment that the City has violated its First Amendment right to petition pursuant to 28 U.S.C. §§2201(a) and 2202.

76. Bahamas also seeks reasonable attorneys' fees as part of the costs authorized to the prevailing party in an action pursuant to 42 U.S.C. §1983, predicated upon 42 U.S.C. §1988.

### JURY DEMAND

77. Bahamas demands a jury trial on all issues so triable.

### PRAYER

78. Bahamas requests the following relief:

   a. A declaration that the City deprived Bahamas of Bahamas' First Amendment right to petition the government for redress of grievances;

   b. Compensatory damages in the amount proven at trial;

   c. Reasonable attorneys' fees and costs pursuant to 42 U.S.C. §1988(b);

   d. Any and all expert fees incurred by Bahamas, pursuant to 42 U.S.C. §1988(c); and

   e. Such other and further relief as this Court may deem just and proper.

Respectfully submitted,

*/s/ Barry Abrams*
Barry Abrams
Attorney-in-Charge
Texas Bar No. 00822700
BLANK ROME LLP
717 Texas Avenue, Suite 1400
Houston, Texas 77002
(713) 228-6601
(713) 228-6605 (fax)
barry.abrams@blankrome.com


Jeffrey M. Tillotson
Texas Bar 20039200
TILLOTSON JOHNSON & PATTON
1201 Main Street, Suite 1300
Dallas, Texas 75202
(214) 382-3040
jtillotson@tillotsonlaw.com

**ATTORNEYS FOR PLAINTIFF
BAHAMAS LAGUNA AZURE, LLC**